# SUPREME COURT.

The People *ex rel.* The First National Bank of Kingston, agt. The Board of Supervisors of Ulster County.

The People *ex rel.* The First National Bank of Rondout, agt. The Same.

The People *ex rel.* The First National Bank of Ellenville agt. The Same.

A *writ of prohibition* against a *board of supervisors*, commanding them to desist and refrain from any further proceedings in imposing or levying any tax upon the *relators—a National bank*, assessed or to be assessed upon their capital paid or to be paid in, will be refused for the reason :

*First.* That it is doubtful whether the board of supervisors have the power to alter the assessment rolls by striking out the name of any person or corporation which may have been placed upon it by the assessors.

*Second.* The writ of prohibition is not a writ of right, and is not granted as a matter of course ; but only on showing satisfactory grounds for relief, and it being made to appear that no considerable public inconvenience can arise from the delay. The writ should not issue where there are other remedies perfectly adequate.

All the tax payers in the county are interested in the assessment and collection of the taxes ; and the allowance of the writ against the board of supervisors might materially delay the completion of their business, and produce much public inconvenience. The taxes against the relators would have to be entirely abandoned, in a summary manner, with no legal mode of collecting them hereafter. The exercise of a sound discretion would leave the relators to pursue other legal

remedies, if any such they have. If the assessors have exceeded their authority and acted entirely without jurisdiction, as claimed, then they are responsible for the damages which may ensue.

*Albany Special Term December*, 1864.

WRITS OF PROHIBITION were issued in favor of each of the relators against the board of supervisors of Ulster county, commanding them to desist and refrain from any further proceedings in imposing or levying any tax upon the relators, assessed or to be assessed upon their respective capital paid or to be paid in, returnable at special term; and that they show cause why they should not be absolutely restrained from any further proceedings to levy said tax upon each of the relators.

Upon the return day of the writs the counsel for the respondents moved to quash them, upon various grounds, which, so far as material, are discussed in the opinion of the court. .

M. SCHOONMAKER, *for respondents.*

E. COOKE, J. HARDENBURGH *and*

S. L. STEBBINS, *for relators.*

MILLER, J.    With the views I entertain, it will not be necessary to enter upon an elaborate examination of all the objections taken to the issuing of the writs of prohibition. There are some points urged which dispose of the whole case, and to the consideration of these I shall confine my remarks.

*First.* I have great doubts whether the board of supervisors have the power to alter the assessment rolls by striking out the name of any person or corporation which may have been placed upon it by the assessors.    Their duties in reference to the equalization of the assessments and the correction of the assessment rolls, are especially provided for by the Revised Statutes (1 *R. S.* 1*st ed.* 395).    Certainly there is no direct authority which confers upon the board of supervisors the right to interfere with the assessment rolls, which are before them, by changing any assessment upon them, unless the assessors have wilfully neglected to meet

People agt. The Board of Supervisors of Ulster County.

for review as required by law (1 *R. S. 5th ed. pp.* 911 *and* 912, § 19). Nor have I been able to discover any adjudicated case which decides that they have any such power. Several decisions were cited on the argument which look very much the other way, although, perhaps, the point was not distinctly presented. (*The People* agt. *The Supervisors of Chenango Co.* 11 *N. Y.* 575; *Mygatt* agt. *Washburn,* 15 *N. Y.* 321.)

The nearest approach to any decision in favor of the views of the relators counsel upon this subject, is the case of *The People* agt. *Works* (7 *Wend.* 486). In the case referred to, a writ of prohibition was granted at special term, *ex parte* by SAVAGE, J. restraining a collector from collecting a tax levied upon the town for purposes which were palpably illegal. In *The People* agt. *The Supervisors of Queens* (1 *Hill,* 201), BRONSON, J., in his opinion remarks, in referring to *The People* agt. *Works,* " that case must not be understood as having decided anything more than that the tax was illegal. He also concludes, " there is not the slightest foundation in the books for saying that a prohibition may issue to a ministerial officer to stay the execution of process in his hands."

I think that the case cited is not a sufficient authority to warrant the exercise of such a power against the board of supervisors of a county under the circumstances existing here, and it being at least doubtful whether they have authority to interfere with the action of the assessors as to the relators, writs of prohibition should not be granted against them for that reason.

*Second.* The writ of prohibition is not a writ of right, and is not granted as a matter of course; but only on showing satisfactory grounds for relief, and upon making it appear that no considerable public inconvenience can arise from the delay. (*Susquehannah Bank* agt. *Board of Supervisors of Broome County,* 25 *N. Y.* 315; *The People* agt. *The Supervisors of Allegany County,* 15 *Wend.* 198.) The granting of the writ rests in the discretion of the court, and it should not issue where there are other remedies perfectly adequate. (*Ex parte Braudlacht,* 2 *Hill,* 367; 36 *Barb.* 248.) All the

tax payers of the county are interested in the assessment
and collection of taxes, and it is not difficult to perceive that
the allowance of these writs of prohibition against the board
of supervisors, might materially delay the completion of
their bursiness, and produce much public inconvenience.
Necessarily, the taxes against the relators must be entirely
abandoned, with no legal mode of collecting them hereafter.
This must be done in a summary manner without giving a
full opportunity for that thorough investigation and examina-
tion of the legal questions presented, which their importance
would seem to demand. The board of supervisors are not
in fault, and are in no way responsible for the failure of the
relators to bring up the case at an earlier period, during
their sitting, or for the neglect to present it, when it arose
upon the action of the assessors in placing the relators on
the assessment rolls. Although the relators may be entirely
free from blame, and present a sufficient excuse for their
apparent neglect to institute proceedings to test the legality
of the assessors action, there is no reason why the public or
the board of supervisors should suffer by means of it. The
exercise of a sound discretion would leave the parties to
pursue other legal remedies if any such they have. If the
assessors have acted entirely without jurisdiction, as is
claimed by the relators' counsel, then there is a complete
and adequate remedy at law against them after the tax is
collected.

A subordinate officer must act within the scope of the
authority committed to him, and if he exceeds it he is liable.
If the assessors have exceeded their jurisdiction, then they
are responsible for the damages which may ensue. (*The
People* agt. *The Supervisors of Chenango Co.* 11 *N. Y.* 563;
*Mygatt* agt. *Washburn,* 15 *N. Y.* 316, 321.)

It was urged upon the argument that the assessors might
be insolvent, and hence the remedy might be inadequate.
If a legal remedy is apparent and clear, I do not think that
in disposing of a motion of this character, that we should,
without any proof of the fact, take into consideration the

remote probability of. the insolvency of the parties who are liable.

It was suggested by the repsondent's counsel, that in such a contingency, if the right was clear, the relators might, after the completion of the tax roll and the delivery to the collector, commence their action and restrain the collection of the tax. This question does not arise, and is not necessary to dispose of the case, and hence I do not deem it appropriate to express an opinion in reference to it.

If there was no jurisdiction whatsoever, as is most confidently insisted, and the board of supervisors have no authority, it is also questionable whether the warrant is not void and the collector liable, in an action to recover the property seized for the payment of the taxes (*The People agt. The Supervisors of Queens*, 1 *Hill*, 198).

If the views I have expressed are sound and correct, then the court would not be justified in awarding the writs of prohibition demanded, and after a deliberate consideration of the able and elaborate arguments of the counsel on both sides upon these motions, with the aid of such light as I have been able to obtain in the limited period allowed for its decision, I have arrived at the conclusion that a proper case is not presented for the relief asked.

It is, perhaps, to be regretted that in a case of so much interest and importance, more ample time could not have been enjoyed for its consideration; but under no circumstances should a remedy so controlling and effective, be summarily invoked where it must effectually prevent the collection of taxes imposed by competent officers, when other relief can be resorted to by those who claim that they are injured. The exercise of a sound discretion demands thus much caution, and I am satisfied no injustice can be done by withholding the remedy here asked. The application for the writs must therefore be denied, and the motion to quash granted, with $10 costs in each case.